UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YERSON JOSUE C.P.,[1]<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, et al.,<br><br>Respondents. | Case No. 1:25-cv-01491-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENTS' MOTION TO DISMISS AND GRANT PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF Nos. 1, 10) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Nicaragua who entered the United States on November 30, 2022. (ECF No. 1-1 at 10; ECF No. 10-1 at 6.[2]) Petitioner was immediately detained upon entering the United States. (ECF No. 1-1 at 10–11.) Petitioner was detained for two days, and on December 1, 2022,[3] the Department of Homeland Security ("DHS") issued a Form I-94, Arrival/Departure Record and Petitioner was paroled pursuant to section 212(d)(5) of the Immigration and

---

[1] The Court partially redacts Petitioner's name to mitigate privacy concerns, as requested by Petitioner and recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

[3] The declaration of the deportation officer states that the Form I-94 was issued on November 30, 2022, citing to Exhibit 3. (ECF No. 10-1 at 3.) However, Exhibit 3, a copy of the Form I-94, shows a date of December 1, 2022. (ECF No. 10-1 at 14.)

1

1  Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5). (ECF No. 10-1 at 14–15.) Petitioner was
2  granted parole until January 30, 2023. (Id. at 14.) Upon Petitioner's release on parole,[4] Petitioner
3  was instructed to report to the U.S. Immigration and Customs Enforcement ("ICE") Field Office
4  in San Francisco, California on January 30, 2023. (ECF No. 1-1 at 11.)

5        On January 30, 2023, Petitioner reported as instructed and was served with a notice to
6  appear ("NTA") "[i]n removal proceedings under section 240 of the Immigration and Nationality
7  Act", charging Petitioner with removability under section 212(a)(6)(A)(i) of the INA. (ECF No.
8  10-1 at 10–12; ECF No. 1-1 at 11.) Petitioner was also given an order of release on recognizance.
9  (ECF No. 1-1 at 11; ECF No. 10-1 at 17–19.)

10        Petitioner hired an attorney and on July 25, 2023, he applied for asylum, withholding of
11  removal, and protection under the Convention Against Torture ("CAT") based on his fear of
12  return to his country of origin. (ECF No. 1-1 at 11.) Petitioner attended all of his immigration
13  court hearings, and he was awaiting his final hearing which was scheduled for 2026.[5] (ECF No. 1
14  at 16.)

15        On January 30, 2024, Petitioner reported to the ICE field office as previously ordered,
16  and he was scheduled to check in a year later, on January 30, 2025, by email. (ECF No. 1-1 at
17  11.) On May 31, 2024, Petitioner was arrested, and subsequently, he was charged with: (1)
18  contacting a minor to commit a felony, in violation of section 288.3(a) of the California Penal
19  Code ("CPC"); (2) arranging a meeting with a minor for the purpose of committing a lewd or
20  lascivious act and going to that meeting place, in violation of CPC § 288.4(b); and (3) attempting
21  to engage in lewd and lascivious acts with a child under the age of 14 in violation of CPC
22  § 288(a). (10-1 at 4, 32–33.) On June 5, 2024, Petitioner pleaded not guilty to the charges. On
23  August 20, 2024, he was released from custody on $1,000 bond. (ECF No. 1-1 at 11.)
24  Petitioner's criminal proceedings remain pending. (ECF No. 1-1 at 12.)

---

[4] The declaration of the deportation officer states: "DHS then released the Petitioner on an Order of Recognizance ('OREC') based on lack of bedspace pending immigration court proceedings. Exh. 4." (ECF No. 10-1 at 3.) However, Exhibit 4, a copy of an order of release on recognizance, is dated January 30, 2023. (Id. at 17.)

[5] After Petitioner was detained by ICE, his immigration court proceedings were transferred from San Francisco to the Adelanto Immigration Court. His preliminary hearing was scheduled for November 26, 2025. (ECF No. 1-1 at 11.)

1       On January 30, 2025, Petitioner emailed the San Francisco ICE field office as ordered. (ECF No. 1-1 at 12, 26.) The following day, Deportation Officer ("DO") Calvin Choi responded, informing Petitioner to report back in a year, on January 30, 2026. However, minutes later, DO Choi sent another email to ignore his first email and telling Petitioner to report to the San Francisco Field Office in person on February 3, 2025. (Id. at 12, 26–27.)

       On February 3, 2025, Petitioner reported to the field office as instructed. DO Choi and another officer interviewed Petitioner, asking him about his arrest and charges. After the interview, DO Choi informed Petitioner that since he trusted them, they would trust Petitioner. DO Choi informed him he would not be detained, but that he needed to provide ICE with the police report of the incident, a letter from his criminal attorney attesting that the proceedings were pending, and his passport. (ECF No. 1-1 at 12.)

       On February 18, 2025, Petitioner emailed DO Choi a copy of his passport, a letter from his criminal attorney, and a minute order from his last criminal court hearing. (ECF No. 1-1 at 12, 35–36.) DO Choi responded, informing Petitioner that he must appear in person to turn in his passport. (Id. at 12, 36–37.)

       On February 19, 2025, Petitioner reported to the San Francisco ICE Field Office as instructed and provided DO Choi with his passport and physical copies of the police report of the incident, a letter from Petitioner's criminal attorney, and the minute order from Petitioner's last criminal hearing. Sometime later, another ICE Officer told Petitioner that he would not be detained, but that they would place an electronic monitor on his left foot. The ICE officer also told Petitioner that he needed to register with the Intensive Supervision Assistance Program ("ISAP") for additional monitoring by going to their office in San Francisco. (ECF No. 1-1 at 12–13.)

       Once Petitioner left the ICE field office, he immediately went to the ISAP office in San Francisco and registered for the program. Upon registering with ISAP, Petitioner was given an individual service plan that required him to report to the ISAP office every four weeks. Petitioner would receive home visits from ISAP officials every four weeks,[6] and he would receive a video

---

[6] The home visits could occur anytime between 8 a.m. and 5 p.m., so Petitioner had to remain at home the entire

1  call from his case manager.[7] (ECF No. 1-1 at 13, 42.) Petitioner complied with all of his ISAP
2  reporting requirements. (Id. at 13.)

3        On March 19, 2025, Petitioner reported to the ICE field office as required. (ECF No. 1-1
4  at 13.) Petitioner was ordered to return on April 8, 2026. (Id.)

5        On September 13, 2025, Petitioner was awakened by the knocking of his landlord, who
6  informed Petitioner that ICE officials were outside the home asking to speak to him. Petitioner
7  went to his front door to speak to the ICE officers. There were three officers present. When
8  Petitioner confirmed his name, one ICE officer asked him to exit the home, and Petitioner was
9  taken into custody. Petitioner was taken to the San Francisco ICE Field Office for processing.
10 (ECF No. 1-1 at 9.) He was served with an administrative warrant issued the same day for his
11 arrest. (Id. at 10, 49.) When Petitioner asked why he was detained given nothing had changed
12 since he last reported into ICE and he was complying with ISAP requirements, an ICE officer
13 told him that it was because the current Administration now had a policy of zero tolerance for
14 noncitizens with arrests. On September 15, 2025, Petitioner was transferred to the Mesa Verde
15 ICE Processing Center in Bakersfield, California where he is currently detained. (Id. at 10.)

16       On November 4, 2025, Petitioner filed a petition for writ of habeas corpus and a motion
17 for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On November 5, 2025, the Court
18 denied the motion for TRO. (ECF No. 5.) On November 10, 2025, Petitioner filed a second
19 motion for TRO. (ECF No. 7.) On November 18, 2025, the Court denied Petitioner's second
20 motion for TRO. (ECF No. 9.) On December 8, 2025, Respondents filed a motion to dismiss.
21 (ECF No. 10.) On December 19, 2025, Petitioner filed an opposition. (ECF No. 11.) On
22 December 29, 2025, Respondents filed a reply. (ECF No. 12.)

## II.

## DISCUSSION

25       In the petition, Petitioner raises the following claims for relief: (1) Petitioner's re-arrest
26 without a hearing violated the Due Process Clause of the Fifth Amendment; (2) the application

---

day. (ECF No. 1-1 at 13.)
[7] The case manager could call Petitioner at any time between 8 a.m. and 5 p.m. (ECF No. 1-1 at 13.)

4

of 8 U.S.C. § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA. (ECF No. 1 at 40–41.) Petitioner requests the Court order his immediate release on the conditions of his prior release until DHS proves to a neutral adjudicator by clear and convincing evidence that he is a present danger or an unmitigable flight risk, or in the alternative, order the release of Petitioner within fourteen days unless Respondents provide Petitioner with an individualized hearing before a neutral adjudicator to determine the necessity of his re-detention. (Id. at 41–42.)

In the motion to dismiss, Respondents contend that Petitioner's detention is mandatory under § 1225(b) and "[n]othing in § 1225 permits [Petitioner]'s release or requires a bond hearing." (ECF No. 10 at 2.) Respondents further contend that even in Petitioner "were correct that § 1226 applied, he would not be entitled to relief. His arrest not only was itself a (significant) changed circumstance, but it violated the conditions of his release. His re-detention was thus permissible under both § 1226(b) and due process principles." (Id. at 1.)

**A. Statutory Framework**

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'"[8] Avilez, 69 F.4th at 529 (alterations in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under

---

[8] Subsection C "provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Avilez, 69 F.4th at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)).

5

Subsection A is discretionary" and "provides for release on bond or conditional parole." Avilez, 69 F.4th at 529. "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," and the noncitizen "will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (quoting 8 C.F.R. § 236.1(c)(8)).

"[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. "Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens." Id. As relevant here, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Thus, "[a]ll applicants for admission who are not processed for expedited removal [pursuant to § 1225(b)(1)] are placed in regular removal proceedings under § 1225(b)(2)(A). That process generally entails a hearing before an immigration judge pursuant to § 1229a." Innovation Law Lab v. McAleenan, 924 F.3d 503, 507 (9th Cir. 2019). Although § 1225(b)(2) "mandates detention of aliens throughout the completion of applicable proceedings," they "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings, 583 U.S. at 302, 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). "Such parole, however, 'shall not be regarded as an admission of the alien,'" and "when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

### B. Applicability of § 1225(b)

> Petitioner contends that DHS has repeatedly treated Petitioner as subject to § 1226(a), despite the fact that he is charged as present without admission in his NTA. When he first reported into the San Francisco ICE field office on January 30, 2023, ICE issued a Form I-220A, Order of Release on Recognizance, which provides that the document is issued pursuant to § 1226(a). Then, when Petitioner was re-detained on September 13, 2025, ICE processed him for an administrative warrant under § 1226.

(ECF No. 1 at 37 (citations omitted).) Respondents argue that Petitioner "is an 'applicant for admission' under both the plain text of § 1225(b) and IIRIRA's legislative history." (ECF No. 10 at 10.) Respondents note that "[j]udges in at least ten district courts, including this one, have adopted the Government's position and held that § 1225(b) applies to all aliens who have not been admitted, even if they are physically present in the United States" but "acknowledge[] that a majority of judges (including several of this Court) have rejected that approach and applied § 1226 to any alien present in the United States, even if he was never lawfully admitted." (Id. at 9.)

Although Petitioner was previously paroled pursuant to 8 U.S.C. § 1182(d)(5), the grant of parole lasted only until January 30, 2023. (ECF No. 10-1 at 14.) On January 30, 2023, Petitioner was served with an NTA "[i]n removal proceedings under section 240 of the Immigration and Nationality Act." (ECF No. 10-1 at 10.) Petitioner also was given an order of release on recognizance, ICE Form I–220A, which states: "In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions[.]" (Id. at 17.) In regard to "INS Form I–220A 'Order of Release on Recognizance,'" the Ninth Circuit found "the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)." Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1112, 1115 (9th Cir. 2007).

"[T]he government cannot switch tracks and subject Petitioner[] to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioner[] in removal proceedings under section 1229a and released [him] on [his] own recognizance under section 1226(a)." Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, --- F. Supp. 3d ----, 2025 WL

2741654, at *9 (N.D. Cal. Sept. 26, 2025), appeal filed, No. 25-7472 (9th Cir. filed Nov. 26, 2025). Accord Souza v. Robbins, No. 1:25-CV-01597-DJC-JDP, 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025) (finding government cannot "'switch tracks' and subject a petitioner to mandatory detention under section 1225(b)(2) where it has placed a petitioner in removal proceedings under section 1229a and released her on her own recognizance under section 1226(a)" (citing Valencia Zapata, 2025 WL 2741654, at *9)).

"District courts around the country have rejected the government's position that section 1225(b)(2) permits it to pursue mandatory detention against noncitizens who have not been lawfully admitted but have been present in the country for years." Valencia Zapata 2025 WL 2741654, at *10 (citing Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases)). "Here in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission.'" Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (collecting cases).

Based on the foregoing, the Court recommends finding that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b).

**C. Due Process**

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Other courts, including this Court, have held similarly." J.E.H.G. v. Chestnut, No. 1:25-CV-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."

1 Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal.
2 Sept. 12, 2025). "Even assuming Respondents are correct that § 1225(b) is the applicable
3 detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty
4 interest created by the fact that the Petitioner in this case was released on recognizance[.]"
5 J.E.H.G., 2025 WL 3523108, at *10. See Castillo v. Wofford, No. 1:25-CV-01586-JLT-HBK,
6 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding Barrea-Echavarria v. Rison, 44 F.3d
7 1441, 1450 (9th Cir. 1995) (en banc) and Dep't of Homeland Sec. v. Thuraissigiam, 140 S. Ct.
8 1959 (2020) "inapposite," rejecting Respondents' reliance "on the doctrine of 'entry fiction' to
9 argue that Petitioner is an inadmissible noncitizen who should be treated as if she has not entered
10 the country and generally has no right to procedural due process," and "reject[ing] Respondents'
11 argument that 'entry fiction' cases guide the analysis for cases not involving an expedited
12 removal process"); Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL
13 3533606, at *3 (E.D. Cal. Dec. 9, 2025) ("Many district courts in the Ninth Circuit have found
14 that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in
15 their continued release, entitling them to certain due process protections, the extent of which are
16 determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).").

17     "Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424
18 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been
19 applied to Petitioner are sufficient to protect the liberty interest at issue." J.E.H.G., 2025 WL
20 3523108, at *11.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

25 Mathews, 424 U.S. at 334.

26     As to private interest, it "is beyond dispute" that Petitioner's interest here is
27 "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v.
28 Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody,

1  detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process]
2  Clause protects." Zadvydas, 533 U.S. at 690. "Turning to the second factor, the risk of erroneous
3  deprivation of Petitioner's liberty is high where, as here, '[the petitioner] has not received [and
4  will not receive] any bond or custody redetermination hearing.'" Kakkar v. Chestnut, No. 1:25-
5  CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025) (alterations in original)
6  (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal.
7  May 16, 2025)). "Finally, as other courts have done, this Court concludes that the government's
8  interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at
9  *12. Accordingly, the Mathews factors weigh in favor of a bond or custody redetermination
10 hearing.

11     The Court now turns to whether a pre-deprivation or post-deprivation bond hearing is
12 appropriate based on the facts of this case.

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.
>
> In contrast, this Court ordered a parole revocation hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug.

28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*Id*.

J.E.H.G., 2025 WL 3523108, at *11–12.

The Court recommends that a post-deprivation hearing is appropriate based on the facts of this case, and that "the burden at any such hearing [be placed] on the government to demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight." J.E.H.G., 2025 WL 3523108, at *14 (citing Pinchi v. Noem, 792 F. Supp. 3d 1025, 2025 WL 2084921, at *7 (N.D. Cal. 2025)). See J.E.H.G., 2025 WL 3523108, at *14 ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. "The only potential injury the government faces is a short delay in detaining [Petitioner] if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that [his] detention is necessary to prevent danger to the community or flight." Pinchi, 792 F. Supp. 3d at 1037–38.

///

///

11

## III.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;
2. Respondents' motion to dismiss (ECF No. 10) be DENIED; and
3. Respondent be directed to provide Petitioner with an individualized hearing before an immigration judge where the government must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community to justify his re-detention.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 6, 2026**

STANLEY A. BOONE
United States Magistrate Judge

12